**E-FILED on** 7/30/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPEN ROAD VENTURES, LLC, and TODD MADEIROS,<br><br>Plaintiffs,<br><br>v.<br><br>PARKER DANIEL,<br><br>Defendant. | No. C-09-02041 RMW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>**[Re Docket No. 3]** |

Defendant Parker Daniel's motion to dismiss for lack of personal jurisdiction and improper venue, or alternatively to transfer the action to the Northern District of Texas, came on for hearing before the court on June 26, 2009. Plaintiffs oppose the motion. Having considered the papers submitted by the parties and the arguments of counsel at oral argument, and for the reasons set forth below, defendant's motion is denied.

## I. BACKGROUND

Plaintiffs Open Road Ventures, LLC and Todd Madeiros brought this action against defendant Parker Daniel alleging five state law causes: (1) intentional misrepresentation and fraudulent inducement; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) rescission; and (5) unfair business practices in violation of California Business and

Professions Code Section 17200. Plaintiffs' suit arises out of the purchase of an unincorporated business, AutoAdListings.com, from Daniel.

Plaintiff Todd Madeiros is the President and C.E.O. of Open Road Ventures ("Open Road"), a California corporation with its principal place of business in Campbell, California. (Compl. ¶ 1.) Open Road manages and develops automotive websites. (Compl. ¶ 9.)

AutoAdListings.com is a network of automotive and motorcycle websites that provide classified advertisement services for a listing fee to sellers of automobiles and allows buyers to view the listings for free. (*Id.* ¶ 11.) Defendant Parker Daniel ran the business from his home in Benbrook, Texas. (Daniel Decl. ¶¶ 1, 2.) When conducting business through AutoAdListings, Daniel had no offices or employees in California, and did not direct advertising specifically toward California residents. (*Id.* ¶ 4-8.) All of Daniel's assets related to AutoAdListings were located in Benbrook. (*Id.* ¶ 3.) In January 2009, Daniel posted a listing on BizBuySell.com in an effort to sell the AutoAdListings business. *Id.* ¶ 11.) Other than his listing on BizBuySell, Daniel did not specifically target California to identify a potential buyer. (*Id.* ¶ 12.)

On January 27-28, 2009, after coming across Daniel's BizBuySell advertisement for AutoAdListings, Madeiros contacted Daniel to obtain more information about the business in contemplation of a possible purchase. (Compl. ¶ 12.) Soon after, the parties entered a multi-staged negotiation, conducted exclusively via e-mail and telephone, for the sale of AutoAdListings to Open Road. (Compl. ¶ 13-16.) The parties never met face-to-face, and neither party traveled to the other party's state at any time during the negotiations. (Daniel Decl. ¶ 16; Madeiros Decl. ¶¶ 6-17.) As part of the negotiation, Daniel exchanged information concerning AutoAdListings' background and financial condition, and his methods for growing revenue. (Compl. ¶ 13.)

On February 24, 2009, the parties finalized their agreement when Open Road executed an Asset Purchase Agreement with Daniel. (Compl. ¶ 17.) The parties continued to work together after the sale closed, making arrangements for the transfer of AutoAdListings assets and discussing growth strategies for the business. (Madeiros Decl. ¶ 22.) Within a month after the transaction became official, AutoAdListings' revenues plummeted, decreasing by more than 50 percent. (Compl. ¶ 21.) In response to the dramatic decline, Madeiros began investigating possible causes.

1  (*Id.* ¶ 22.)  As a result of his investigation, Madeiros discovered evidence that prior to the closing
2  date, AutoAdListings had marketed its websites by contacting potential customers through
3  unsolicited e-mail advertisements sent to craigslist.com users.  (*Id.*)  Madeiros alleges that Daniel
4  intentionally hid these tactics from Open Road, and that AutoAdListings's drop in revenues was
5  caused by the cessation of these techniques after the sale closed.  (*Id.* ¶ 27.)

6  When Open Road failed to pay the agreed upon consideration as prescribed in Schedule B of
7  the Asset Purchase Agreement, (Compl., Ex. A 13), Daniel sent successive letters dated April 6 and
8  April 7, 2009 to Madeiros demanding full performance and mediation of any dispute arising out of
9  the contract, (Daniel Decl., Ex. B).  Soon after, Open Road initiated this lawsuit.

## II.  ANALYSIS

### A.  Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where, as here, the jurisdictional challenge is premised on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."  *Id.*  In such cases, the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction."  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).  "Uncontroverted allegations in the complaint must be taken as true." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  A court must also resolve in the plaintiff's favor any "conflicts between parties over statements contained in affidavits."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

The California long-arm statute permits a court to exercise jurisdiction over non-resident defendants "on any basis not inconsistent with the Constitution of this state or of the United States." CAL. CIV. PROC. CODE § 410.10.  Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional inquiries under state law and federal due process merge into one analysis.  *FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).  For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must possess sufficient "minimum contacts" with the forum such that the exercise of jurisdiction

1  "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d
2  at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The court may exercise specific jurisdiction over a non-resident defendant when:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). This test is satisfied here. Plaintiffs' claims include tort claims for misrepresentations made by defendant to California plaintiffs, plaintiffs' claims arise out of these actions, and the harm is alleged to have occurred here.

First, defendant purposefully directed his activities toward the forum. Purposeful direction may be found where the defendant committed an intentional act expressly aimed at the forum state causing harm in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)). Plaintiffs allege that Daniel committed a series of intentional acts directed at the plaintiffs in California over the course of the parties' month-long negotiations. Daniel purposefully communicated (via e-mail and telephone) with Open Road and Madeiros about the financial condition of AutoAdListings and is alleged to have knowingly concealed important aspects of his business that might have dissuaded plaintiffs from purchasing it in the first place. (Compl. ¶¶ 26, 29-35.) Open Road and Madeiros allege that Daniel repeatedly engaged in fraudulent behavior directed to them in California to induce them to purchase his business. (Compl. ¶¶ 26-27.) The harm to plaintiffs occurred here. This is sufficient to find that defendant purposefully directed his activities toward the forum.

Second, plaintiffs' claims arise out of these forum-related activities.

Third, the exercise of jurisdiction is reasonable. Defendant bears the burden of presenting a "compelling case" that the exercise of jurisdiction would be unreasonable or offend traditional

notions of fair play and substantial justice, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Defendant has not met his burden. The court considers the following seven factors:

(1) the extent of the defendants' purposeful interjection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum;
(3) the extent of conflict with the sovereignty of the defendants' state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). No factor is dispositive and the court must balance all seven. *Id.*

The "purposeful interjection" analysis is analogous to the purposeful direction analysis discussed above. *Sinatra*, 854 F.2d at 1199; *see also Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987). As noted, Daniel has interjected himself into California by purposefully directing his actions toward California.

The second factor is the burden imposed on defendant in litigating in the forum. This factor weighs slightly in favor of Daniel. "The primary concern is for the defendant's burden." *FDIC*, 828 F.2d at 1444. Defendant contends that it would be a financial hardship for him to defend in California. (Daniel Decl. ¶ 20). Nevertheless, the court recognizes that "[m]odern means of communication and transportation have tended to diminish the burden of defense in a distant forum." *Ins. Co. Of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981). This factor weighs slightly in favor of Daniel.

The third factor is the extent of a conflict with the sovereignty of the defendant's state. There is no significant conflict here.

The fourth factor is the forum state's interest in adjudicating the dispute. This factor weighs heavily against defendant in this case. California has a strong interest in protecting its citizens from the tortious conduct of others and thus has a significant interest in adjudicating the dispute because the harm to its citizens occurred here. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir. 1986).

The fifth factor is the most efficient judicial resolution of the controversy. Defendant argues that California is not the most efficient forum, noting that witnesses and relevant documents will be

1 around the country. Plaintiff notes that many witnesses, including third party witnesses, are located
2 here. This factor does not weigh in defendant's favor.

3 The sixth factor is the importance of the forum to the plaintiff's interest in convenient and
4 effective relief and it weighs heavily in plaintiffs' favor. Plaintiffs are California citizens and are
5 located in California, and California is their preferred forum.

6 The final factor is the existence of an alternate forum. This factor weighs in defendant's
7 favor in that Texas offers an acceptable alternative forum.

8 Balancing all the factors, some weigh in favor of plaintiffs, and some weigh in favor of
9 defendant. Defendant has not met his burden of coming forward with a "compelling case" that the
10 exercise of jurisdiction would be unreasonable. Accordingly, the exercise of personal jurisdiction
11 sufficiently comports with substantial justice and fair play.

**B.     Venue**

Defendant also seeks dismissal for improper venue, contending that venue is not proper under 28 U.S.C. § 1391 and also that the forum selection clause in the parties' contract requires venue to be in Texas.

### 1.     Venue under 28 U.S.C. § 1391

28 U.S.C. § 1391(a) governs venue in diversity cases. Under that statute, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Section 1391(a)(2). In tort actions, the Ninth Circuit applies a "locus of the injury" test for the "events or omissions" inquiry. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). Because the injury occurred in California, venue is proper here under 28 U.S.C. § 1391(a)(2).

### 2.     The Forum Selection Clause

Defendant also argues that even if venue were proper in California, the forum selection clause in the parties' agreement should control and dictate a Texas venue. The clause reads as follows:

> **Governing Law.** This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of the party demanding such mediation or arbitration, as applicable, and the venue for such mediation or arbitration shall be the State and County of the principal office of the party requesting

ORDER DENYING DEFENDANT'S MOTION TO DISMISS—No. C-09-02041 RMW
EHM/ter                                                        6

> same. The arbitration award shall be final and binding on both parties. Judgment upon any such arbitration award may be entered in any court having jurisdiction.

(Compl. Ex. A ¶ 13.)

The parties disagree over the meaning and scope of this venue provision. The court notes, however, that the clause does not expressly address litigation, and therefore, the clause does not provide a basis for dismissing the action or transferring the action to a different venue. Except as so noted, the court does not pass judgment on the meaning or effect of the contractual Governing Law provision at this time. Thus, the issue of whether or not this dispute is subject to mediation or arbitration and where such mediation or arbitration should occur, is not addressed or resolved by this order. Nothing in this order should be construed to preclude a party seeking arbitration or mediation from filing a motion to compel pursuant to the contract.

### C. Transfer of Venue

Finally, defendant moves in the alternative to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Factors that may be considered include:

> (1) plaintiff's choice of forum,
> (2) convenience of the parties,
> (3) convenience of the witnesses,
> (4) ease of access to the evidence,
> (5) familiarity of each forum with the applicable law,
> (6) feasibility of consolidation of other claims,
> (7) any local interest in the controversy, and
> (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). The defendant must make a strong showing of inconvenience to warrant upsetting a plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9tth Cir. 1986).

Defendant's argument here refers to the earlier arguments he made, and asserts that the interest of justice and convenience of defendant and witnesses favor a transfer to the Northern District of Texas. (Motion at 11.) Defendant has not carried his burden.

Many of these factors are the same as those listed above for the third prong of the specific jurisdiction test, and, for similar reasons, the court concludes that defendant has not met his burden of showing that a transfer to another venue is appropriate.

### III. ORDER

For the foregoing reasons, the court DENIES defendant's motion to dismiss for lack of personal jurisdiction and for improper venue, or alternatively to transfer venue.

DATED: 7/29/09

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS—No. C-09-02041 RMW
EHM/ter 8

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

George Alan Yuhas          gyuhas@orrick.com

Nancy E. Harris            nharris@orrick.com

**Counsel for Defendants:**

Andrew Thomas Mortl        amortl@glynnfinley.com

Patricia L. Bonheyo        tbonheyo@glynnfinley.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     7/30/09                                    TER
                                                **Chambers of Judge Whyte**

ORDER DENYING DEFENDANT'S MOTION TO DISMISS—No. C-09-02041 RMW
EHM/ter                              9